# DANIEL RIVERA ET AL. *v.* VETERANS MEMORIAL MEDICAL CENTER
## (SC 16752)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

Argued December 13, 2002—officially released March 25, 2003

*Brian T. Mahon*, for the appellants (plaintiffs).

*Kathleen M. Nevins*, for the appellee (defendant).

*Doreen West Amata*, for the appellees (third party defendant Brown, Welsh and Votre, P.C., et al.).

*Opinion*

KATZ, J. The principal issue in this appeal[1] is whether the trial court abused its discretion by changing the definition of a class previously certified for this class action suit and thereafter decertifying the class on the basis of that revised definition. The plaintiffs[2] appeal from the order of the trial court decertifying their class action against the defendant, Veterans Memorial Medical Center.[3] The defendant contends that this court lacks jurisdiction to consider this appeal because the trial court's decertification order is not a final judgment. We conclude that an order decertifying a class action

---

[1] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

[2] Named as plaintiffs in this case were Daniel Rivera, Jesus Ruiz, Bradley Elkins, Thomas Ludemann, Margaret Dorsey, Patrick Mullaney and Richard Smeriglio, all of whom received treatment at the defendant Veterans Memorial Medical Center. The plaintiffs brought the action "on behalf of themselves and others similarly situated." References herein to the plaintiffs are to the seven individually named plaintiffs.

[3] Prior to the trial court's order decertifying the class, the defendant had filed a third party complaint against Brown, Welsh and Votre, P.C., the law firm and certain of its members that had represented Veterans Memorial Medical Center in connection with collection activity relevant to this case. References herein to the defendant are to Veterans Memorial Medical Center.

constitutes a final judgment. We further conclude that the trial court abused its discretion in decertifying the class. Accordingly, we reverse the judgment of the trial court.

The record reveals the following facts and procedural history. In their second amended complaint dated April 17, 1998, the plaintiffs alleged that the defendant had treated them for various work-related injuries, and thereafter had subjected the plaintiffs to unlawful collection activity for charges resulting from that treatment. Specifically, the plaintiffs alleged, inter alia: abuse of process; breach of the implied covenant of good faith and fair dealing; violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.; defamation; and intentional infliction of emotional distress. Also on April 17, 1998, the plaintiffs filed an amended motion for certification of a class action.

On June 2, 1998, the trial court, *Levine, J.*, granted the plaintiffs' motion and certified the matter as a class action.[4] On July 3, 2000, pursuant to an agreement by the parties, the case was transferred to the Complex Litigation Docket. During a status conference, the trial court, *Aurigemma, J.*, sua sponte, raised the issue of the propriety of the class certification. On October 24,

---

[4] The trial court certified "as a class to be represented in this case by the named plaintiffs:

"All persons with accepted workers' compensation claims, as that term is defined in the workers' compensation code and relevant case law, who were the subject of collection activity by [the defendant], its agents, servants and assigns, for unpaid medical bills incurred in the treatment of injuries or work-related occupational diseases, as those terms are defined by the workers' compensation code and relevant case law, provided that [the defendant], its agents, servants and assigns, were placed on notice by the person or his agents, servants, assigns, employer, employer's workers' compensation insurance carrier, or the workers' compensation commission, that said injuries or occupational diseases were work-related, as that term is defined in the workers' compensation code and relevant case law."

2000, Judge Aurigemma ordered the defendant to prepare a report reviewing the claims of every twentieth person who was a purported class member. After submitting the report to the trial court, the defendant filed a motion for reconsideration of class certification. Following two days of hearings on the motion, Judge Aurigemma issued an order decertifying the class. This appeal followed.

I

As a threshold issue, the defendant contends that a decertification order is interlocutory in nature and, therefore, not a final judgment. Accordingly, the defendant contends that this court lacks jurisdiction to hear this appeal. We disagree.[5]

Our law surrounding interlocutory appeals and final judgments is well settled. "The right of appeal is purely statutory.[6] It is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met. . . . The statutory right to appeal is limited to appeals by aggrieved parties from final judgments. . . . Because our jurisdiction over appeals . . . is prescribed by statute, we must always determine

---

[5] We note that we have, in the past, considered class action certification orders on appeal to this court. See, e.g., *Marr* v. *WMX Technologies, Inc.*, 244 Conn. 676, 711 A.2d 700 (1998). We have not, however, been presented expressly with the issue of whether we have jurisdiction to hear such appeals.

[6] In the present case, the defendant concedes that, pursuant to General Statutes § 42-110h, the plaintiffs have a statutory right to appeal from the trial court's decertification order as it pertains to the CUTPA count. See General Statutes § 42-110h ("[a]n order issued under this section shall be immediately appealable by either party"). The defendant contends, however, that the CUTPA allegations can provide no basis for jurisdiction, because "[n]o argument on the record pertained to CUTPA issues." We disagree with the limited scope of inquiry that the defendant proffers. Section 42-110h expressly confers jurisdiction independent of whether the trial court's decision was predicated on the CUTPA allegation. Therefore, because the final judgment rule is satisfied with respect to the CUTPA counts, we limit our consideration to the issue of whether the trial court's order, as it affects the remaining counts, constitutes a final judgment.

the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim. . . .

"Adherence to the final judgment rule is not dictated by legislative fiat alone. . . . In both criminal and civil cases . . . we have determined certain interlocutory orders and rulings of the Superior Court to be final judgments for purposes of appeal. An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." (Citations omitted.) *State v. Curcio*, 191 Conn. 27, 30–31, 463 A.2d 566 (1983); accord *State v. Malcolm*, 257 Conn. 653, 667, 778 A.2d 134 (2001). "Unless the appeal is authorized under the *Curcio* criteria, absence of a final judgment is a jurisdictional defect that [necessarily] results in a dismissal of the appeal." (Internal quotation marks omitted.) *State v. Malcolm*, supra, 667.

Applying these principles, we conclude that a decertification order satisfies the second prong of the *Curcio* test, and is, therefore, appealable.[7] "The second prong of the *Curcio* test focuses on the nature of the right involved. It requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [party] irreparably harmed unless they may immediately appeal." (Internal quotation marks omitted.) *Shay v. Rossi*, 253 Conn. 134, 165, 749 A.2d 1147 (2000). Accordingly, "the [appellant] must do more than show that the trial court's decision threatens him with irreparable harm. The [appellant] must show that that decision threatens to abrogate a

---

[7] Because we conclude that a decertification order satisfies the second prong of *Curcio*, we need not decide if it satisfies the first prong.

right that he or she *then* holds." (Emphasis in original.) *State* v. *Longo*, 192 Conn. 85, 91, 469 A.2d 1220 (1984).

Our determination is predicated on the fact that class actions serve a unique function in vindicating plaintiffs' rights. "[C]lass action procedures . . . increase efficiencies in civil litigation by encouraging multiple plaintiffs to join in one lawsuit. Many jurisdictions have recognized that in certain situations, class action suits are superior to individual lawsuits." *Grimes* v. *Housing Authority*, 242 Conn. 236, 244, 698 A.2d 302 (1997). "Connecticut's class action procedures . . . are designed to prevent the proliferation of lawsuits, and duplicative efforts and expenses." Id., 247. Accordingly, we have noted that class actions serve four essential and distinct functions, specifically, to: "(1) promote judicial economy and efficiency; (2) protect defendants from inconsistent obligations; (3) protect the interests of absentee parties; and (4) *provide access to judicial relief for small claimants*." (Emphasis added.) Id., 244.

In the present case, when the plaintiffs were certified as a class by the trial court, *Levine, J.*, they secured the right to proceed in a class action against the defendant. That right provided to the plaintiffs an economically efficient means to proceed in an action that they otherwise might be unable to pursue. See *Samuel* v. *University of Pittsburgh*, 538 F.2d 991, 997 (3d Cir. 1976) (concluding that "those members of the class whose claim is small will not be able to secure the necessary assistance of counsel unless the decertification is lifted"); *Miles* v. *America Online, Inc.*, 202 F.R.D. 297, 304 (M.D. Fla. 2001) (noting that "[e]ach individual's amount [of damages] is fairly minimal and the cost large for each member to proceed individually against [the defendant]"). When the trial court, *Aurigemma, J.*, decertified the class two years after the initial certification, the right to proceed as a class was "irretrievably lost and the [plaintiffs were] irreparably harmed."

(Internal quotation marks omitted.) *Shay* v. *Rossi,*
supra, 253 Conn. 165. Therefore, because the trial
court's decertification order prevented the plaintiffs
from presenting their claims as a class, we conclude
that the order constitutes a final judgment under the
second prong of *Curcio.*[8]

## II

We next turn to the plaintiffs' claim that the trial
court, *Aurigemma, J.,* abused its discretion when it
decertified the class. Specifically, the plaintiffs contend
that the trial court abused its discretion because it
changed the definition of the class from the one pre-
viously certified and then decertified the class based
on the plaintiffs' inability to satisfy the requirements of
a class action applying that new definition.[9] Addition-
ally, the plaintiffs contend that this decision improperly
was predicated largely on the court's determination that
the plaintiffs would be unable to succeed on the merits.
The defendant contends that the trial court did not
abuse its discretion and that any change to the definition
of the class was harmless. The defendant further asserts
that any consideration of the merits by the trial court
was not improper. We agree with the plaintiffs.

[8] The defendant cites *Coopers & Lybrand* v. *Livesay,* 437 U.S. 463, 98 S.
Ct. 2454, 57 L. Ed. 2d 351 (1978), for the proposition that certification
orders are not immediately appealable. The defendant's reliance is misplaced
because that case was superseded in 1998 by the addition of subsection (f)
to rule 23 of the Federal Rules of Civil Procedure, which provides for
interlocutory appeals to the Circuit Courts of Appeals from District Court
orders of class certification or decertification. Review, however, is not auto-
matic, as the courts may exercise discretion in hearing such appeals. See
*Prado-Steiman ex rel. Prado* v. *Bush,* 221 F.3d 1266, 1276 (11th Cir. 2000).

[9] In their brief to this court, the plaintiffs contended that it was an abuse
of discretion for the trial court to have revisited the issue of the propriety of
class certification. At oral argument before this court, however, the plaintiffs
conceded that the trial court properly could have revisited the issue and,
therefore, focused on whether the trial court had abused its discretion by
decertifying the class under the facts in the present case.

We note at the outset that our class action jurisprudence is sparse, as most class actions are brought in federal court. Our class action requirements, however, are similar to those applied in the federal courts. Compare Practice Book §§ 9-7[10] and 9-8[11] with Fed. R. Civ. P. 23 (a) and (b).[12] Both sets of rules require that at

[10] Practice Book § 9-7 provides: "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

[11] Practice Book § 9-8 provides: "An action may be maintained as a class action if the prerequisites of Section 9-7 are satisfied and the judicial authority finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

[12] Rule 23 of the Federal Rules of Civil Procedure provides in relevant part: "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of

"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

"(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods

least four elements be satisfied to certify a class: (1) numerosity—that the class is too numerous to make joinder of all members feasible; (2) commonality—that the members have similar claims of law and fact; (3) typicality—that the named plaintiffs' claims are typical of the claims of the class; and (4) adequacy of representation—that the interests of the class are protected adequately. See Practice Book § 9-7; Fed. R. Civ. P. 23 (a). Thus, we look to federal case law for guidance in construing our class certification requirements. *Marr v. WMX Technologies, Inc.*, 244 Conn. 676, 680–81, 711 A.2d 700 (1998).

We do so, however, mindful that the federal rules impose additional constraints on trial courts overseeing class actions beyond those imposed under our rules. Specifically, rule 23 (c) (1) of the Federal Rules of Civil Procedure instructs the trial court that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."

The federal courts have determined that, "under [r]ule 23 (c) (1), courts are *required* to reassess their class rulings as the case develops." (Emphasis added; internal quotation marks omitted.) *Boucher* v. *Syracuse University*, 164 F.3d 113, 118 (2d Cir. 1999). Therefore, "[e]ven after a certification order is entered, the judge remains free to modify it in the light of subsequent

for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. . . ."

developments in the litigation." *General Telephone Co. of the Southwest* v. *Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982). As a result, "before entry of a final judgment on the merits, a district court's order respecting class status is not final or irrevocable, but rather, it is inherently tentative." *Officers for Justice* v. *Civil Service Commission*, 688 F.2d 615, 633 (9th Cir. 1982), cert. denied, 459 U.S. 1217, 103 S. Ct. 1219, 75 L. Ed. 2d 456 (1983). Accordingly, under the federal rules, a trial court is obligated to monitor continuously the propriety of the class action and to decertify a class when it concludes that certification improvidently was granted.

Our courts, however, are not bound by these federal requirements, although we have stated that "[a trial court] has broad discretion in determining whether a suit should proceed as a class action." (Internal quotation marks omitted.) *Marr* v. *WMX Technologies, Inc.*, supra, 244 Conn. 680. Nonetheless, despite the absence of a requirement under our class action rules that trial courts monitor developments that may bear upon certification, we conclude that such a procedure is prudent and sensible when a trial court considers it warranted under the circumstances of the particular case. Such an approach not only protects the resources of the courts, but also may protect the parties' interests— defendants may be protected from frivolous class action lawsuits and plaintiffs may be permitted to adjust the class definition when necessary to conform to the changing circumstances. Therefore, we adopt an approach similar to that under the federal rule, which permits the trial court to revisit the issue of class certification throughout the proceedings.

We note, however, that, although it is within the purview of the trial court to revisit the issue of class certification, and, if facts require, to alter the definition of the class as developments dictate, principles of equity

and fairness require the trial court to provide reasoning for its decision. This is especially true in a case such as the present one, when the decision results in decertification, considering that "a class once certified on the basis of the requirements of [the class action rules] should be decertified only where it is clear there exist changed circumstances making continued class action treatment improper." *Sley* v. *Jamaica Water & Utilities, Inc.*, 77 F.R.D. 391, 394 (E.D. Pa. 1977). Accordingly, we apply this approach in considering whether the trial court abused its discretion in the present case.

The following additional facts are relevant to our resolution of this issue. In its memorandum of decision dated June 2, 1998, the trial court, *Levine, J.*, adopted the class definition proposed by the plaintiffs and certified a class comprising of "[a]ll persons with accepted workers' compensation claims . . . who were the subject of collection activity by [the defendant] . . . for unpaid medical bills incurred in the treatment of injuries or work-related occupational diseases . . . provided that [the defendant] . . . [was] placed on notice . . . that said injuries or occupational diseases were work-related . . . ." Two years after the action was commenced, when the case was transferred to the Complex Litigation Docket, the trial court, *Aurigemma, J.*, sua sponte, raised concerns about the providence of the class certification. Accordingly, the court ordered the defendant to review the file of every twentieth person of the purported class and to submit a report to the court regarding the potential of these persons to constitute members of the class. After submitting the report, the defendant filed, for the first time, a motion for reconsideration of class certification, contending that the majority of the named plaintiffs did not have accepted workers' compensation claims and, therefore, were not part of the class as certified.[13] On December 7 and 8,

---

[13] The defendant did not file a motion for reconsideration after the initial decision by Judge Levine certifying the class, despite the fact that the defen-

2000, Judge Aurigemma conducted hearings on the class certification issue, and thereafter issued a memorandum of decision decertifying the class.

In the memorandum of decision, the trial court stated that the class had been certified initially as "[a]ll persons with accepted workers' compensation claims . . . against whom the [defendant] *brought suit* for unpaid medical bills incurred in the treatment of work-related injuries or diseases at a time when the [defendant] *knew or should have known of the existence of the accepted workers' compensation claim.*" (Emphasis added.) The trial court acknowledged the plaintiffs' claim that the class, as originally defined by Judge Levine, included those against whom the defendant took any " 'collection activity,' which would presumably include merely writing a letter." Judge Aurigemma, however, responded that "[t]he prior decision of this court certified only the class of people against whom suit had been brought. . . . Therefore, this decision deals only with whether that class, i.e., those against whom suit was brought, was improperly certified."[14] Although the memorandum referred to one purported change in the definition, it contained no mention of, or explanation for, the court's substitution of the language "knew or should have known of the existence of the accepted workers' compensation claim" for the phrase in the initial order, "placed on notice . . . that said injuries or occupational diseases were work-related, as that term is defined in the workers' compensation code and relevant case law."

---

dant had proposed a different definition than the one proposed by the plaintiffs and adopted by the trial court.

[14] Judge Aurigemma defined the class as follows: "All persons with accepted workers' compensation claims, as that term is defined in the workers' compensation statutes and relevant case law, against whom the [defendant] brought suit for unpaid medical bills incurred in the treatment of work-related injuries or diseases at a time when the [defendant] knew or should have known of the existence of the accepted workers' compensation claim."

Judge Aurigemma then set forth facts in evidence pertaining to each named plaintiff as they related to that class definition and examined these facts in light of the class requirements under Practice Book §§ 9-7 and 9-8. See footnotes 10 and 11 of this opinion. The court first determined that numerosity was not satisfied because "the plaintiffs have failed to provide any evidence that there is *anyone* within the class. The plaintiffs proved that some of the named plaintiffs had accepted workers' compensation cases. But such proof alone was not sufficient to bring the plaintiffs within the defined class. The plaintiffs also had to prove, but failed to prove, that *the [defendant] knew or should have* known of the existence of the accepted case prior to the time [the defendant] brought suit." (Emphasis in original.)

The trial court next examined the commonality and typicality requirements in light of the essential elements of the causes of action alleged in the complaint. The court determined that there was no evidence to prove generally that the defendant commenced suit against the plaintiffs at a time when it knew or should have known of the plaintiffs' accepted workers' compensation claims. The court further determined that the plaintiffs did not establish that the defendant, through its procedures, had the intent to abuse process for a wrongful or malicious purpose or to inflict emotional distress and, therefore, that such evidence would be required on a case-by-case basis. The trial court, therefore, concluded that commonality and typicality also were not satisfied and, accordingly, ordered the class decertified.

"Our review [of the trial court's order decertifying the class] is confined to determining whether the trial court abused its discretion." (Internal quotation marks omitted.) *Marr* v. *WMX Technologies, Inc.*, supra, 244 Conn. 680. "Judicial discretion [however] . . . is always legal discretion, exercised according to the rec-

ognized principles of equity. . . . While its exercise will not ordinarily be interfered with on appeal to this court, reversal is required where the abuse is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *Bauer* v. *Waste Management of Connecticut, Inc.*, 239 Conn. 515, 521, 686 A.2d 481 (1996); accord *Burton* v. *Browd*, 258 Conn. 566, 569, 783 A.2d 457 (2001).

"[I]n determining whether to certify the class, a [trial] court is bound to take the substantive allegations of the complaint as true." (Internal quotation marks omitted.) *O'Connor* v. *Boeing North American, Inc.*, 197 F.R.D. 404, 410 (C.D. Cal. 2000), quoting *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 691 F.2d 1335, 1342 (9th Cir. 1982), cert. denied sub nom. *California* v. *Standard Oil Co. of California*, 464 U.S. 1068, 104 S. Ct. 972, 79 L. Ed. 2d 211 (1984). "[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action. . . . [S]ometimes, it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." (Citations omitted; internal quotation marks omitted.) *General Telephone Co. of the Southwest* v. *Falcon*, supra, 457 U.S. 160. "In determining the propriety of a class action, [however] the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of [the class action rules] are met." (Internal quotation marks omitted.) *Eisen* v. *Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974). Although "no party has a right to proceed via the class mechanism"; *Slaven* v. *BP America, Inc.*, 190 F.R.D. 649, 652 (C.D. Cal. 2000); "doubts regarding the propriety of class certification should be resolved *in favor* of certification." (Emphasis added; internal quotation marks omitted.) Id., 651.

In light of these principles, we conclude that the trial court abused its discretion in decertifying the class. As we have stated previously, it is within the purview of the trial court to revisit the issue of class certification, and, if circumstances require, alter the definition of the class as developments dictate. Principles of equity and fairness, however, require the trial court to provide reasoning for its decision. In the present case, the trial court changed the definition it applied when decertifying the class without articulating any rationale for altering the definition, perhaps in reliance on its erroneous conclusion that it had not altered the definition.

It is evident, however, by reference to the original certification order, that Judge Aurigemma, changed the definition in two significant ways. Compare footnotes 4 and 14 of this opinion. A class of plaintiffs who were subject to "collection activity" is substantially broader than a class of plaintiffs against whom the defendant had "brought suit," because collection activity could encompass conduct that falls short of filing a court action. Similarly, evidence that, at the time the defendant engaged in those collection activities against the plaintiffs, the defendant was "placed on notice . . . that [the plaintiffs'] injuries or occupational diseases were work-related," as set forth in the original certification order, imposes a substantially lower threshold of proof than evidence that the defendant "knew or should have known of the existence of the accepted workers' compensation claim."

Moreover, the plaintiffs never were given an opportunity to conduct further discovery to ascertain whether they could satisfy the prerequisites of this new class. Although we grant a trial court a wide degree of latitude in managing a class action, in the present case, the court's change in the definition of the class, its failure to articulate a rationale for that change, and its failure

to provide the plaintiffs with an opportunity to meet the new definition, constitute an abuse of discretion.

Additionally, the record clearly reflects that the trial court considered the merits of the plaintiffs' action when deciding the issue of decertification.[15] Although it may be impossible to isolate the merits of the case from the issue of class certification, "[t]he determination whether there is a proper class . . . does not depend on the existence of a cause of action." (Internal quotation marks omitted.) *Marr* v. *WMX Technologies, Inc.*, supra, 244 Conn. 681. In deciding the certification issue, Judge Aurigemma examined the facts necessary to prove the plaintiffs' claims and concluded that there was no evidence that an accepted workers' compensation claim existed at the time that the defendant undertook collection action against the plaintiffs, much less

---

[15] The following excerpts from the trial court's memorandum of decision are examples of the court's statements reflecting that it considered the merits of the plaintiffs' claims when analyzing whether to decertify the class: "There was clearly no evidence that the [defendant] *actually knew* about the existence of an accepted workers' compensation case for any of the named plaintiffs . . . at the time it brought suit against them.

\* \* \*

"In order to state a cause of action for violation of Connecticut workers' compensation law and public policy (counts two, three, four, five, eight, nine), each plaintiff must prove that the [defendant] filed suit against him to recover for medical treatment at a time when the [defendant] knew or should have known that the plaintiff had an accepted workers' compensation case. . . . In order to establish a cause of action under count one (abuse of process), count seven (intentional infliction of emotional distress), count ten (defamation), and count eleven (false light), the plaintiffs must prove intent and/or knowledge of the [defendant]. Had the [defendant] adopted a procedure of immediately bringing suit against all patients, even those with work-related injuries, then intent to abuse process and/or inflict distress upon the plaintiffs might be inferred. However, there was no evidence of such procedure. The [defendant] went to rather extraordinary lengths to attempt to collect its bills prior to resorting to suit. . . . [The plaintiffs] would have to prove the [defendant's] knowledge and intent in order to recover. The plaintiffs failed to introduce any evidence that could permit any inference as to the [defendant's] knowledge or intent with respect to the purported class as a whole." (Emphasis in original.)

that the defendant knew or should have known of such accepted claims when commencing an action to recover moneys it allegedly was owed. Although these determinations may well bear upon the merits of the plaintiffs' claims, they were not proper considerations on the issue of certification. The plaintiffs bear the burden of proving that they have met the class action requirements of numerosity, commonality and typicality, but they need not prove that their claims ultimately will succeed.

The decision of the trial court is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.

