**Floyd v. Wigfield**

C.P. of Lehigh County, No. 2012-C-4131

*Matthew T. Tranter*, for plaintiffs.
*Edward C. Wigfield*, pro se defendant.
*Carol A. Wigfield*, pro se defendant.
*Thomas J. Gregory*, for defendants Keller Williams Real Estate and Northampton County Regional Realty, LLC d/b/a Keller Williams Real Estate.
*Thomas Geroulo*, for defendant Krause Home Inspection Services Inc.
*Richard P. Kovacs*, for defendant Prudential Patt-White Real Estate-Macungie

JOHNSON, *J.*, Oct. 10, 2014—

## I. INTRODUCTION

Before the court for consideration are plaintiffs, Shannon Floyd, Norman D'Avanzo, and Ruth D'Avanzo's, complaint filed April 2, 2013, defendant Edward C. Wigfield's new matter and cross-claim filed on May 16, 2013, and defendant Northampton County Regional Realty, LLC d/b/a Keller Williams Real Estate's new matter and new matter cross-claims filed on May 7, 2013, defendant's, Krause Home Inspection Service, Inc. answer to plaintiffs' complaint with new matter and cross claims filed on July 17, 2013, answer, new matter and crossclaims of defendant, Prudential Patt, White Real Estate-Macungie, to plaintiffs' complaint filed on August 8, 2013.

On September 8, 2014, the court presided over a non-jury trial in this matter. Present at trial were plaintiff, Shannon Floyd; counsel for plaintiffs, Matthew T. Tranter, Esquire; *pro se* defendants, Edward C. Wigfield ("Wigfield") and Carol A. Wigfield ("Mrs. Wigfield") (collectively, "the Wigfields"); counsel for defendants, Keller Williams Real Estate and Northampton County Regional Realty, LLC d/b/a Keller Williams Real Estate (collectively, "Keller Williams"), Thomas J. Gregory, Esquire; counsel for defendant, Krause Home Inspection Services Inc. ("Krause"), Thomas Geroulo, Esquire; and counsel for defendant, prudential Patt-White Real Estate-Macungie ("Patt-White"), Richard P. Kovacs, Esquire.

Prior to trial, at the pre-trial conference on August 19, 2014, and after specific discussion with the court, Wigfield informed the court that, at trial, he would be pursuing all cross-claims against Keller Williams, Krause, and Patt-White. As a result of Wigfield's representation at the pre-trial conference, counsel for said defendants appeared at trial prepared to defend against the Wigfields' cross-claims. However, at the trial held September 8, 2014, Wigfield did not present any evidence whatsoever in support of the Wigfields' cross-claims against Keller Williams, Krause, or Patt-White. Based upon the Wigfields' failure to present any evidence in furtherance of their cross-claims, this court dismisses the cross-claims filed by the Wigfields against Keller Williams, Krause, and Patt-White and the following findings and conclusions will not further address said cross-claims.

Also at the pre-trial conference, counsel for Keller Williams, Krause, and Patt-White advised the court that Keller Williams, Krause, and Patt-White indicated that they had reached an agreement to withdraw all claims, cross-claims, joinders, and new matters filed by and

against one another. However, the aforesaid parties failed to provide the court with a sufficiently specific stipulation on the record memorializing their agreement to withdraw these claims. As a result, Keller Williams, Krause, and Patt-White did not effectively withdraw their claims against one another prior to trial. Moreover, Keller Williams, Krause, and Patt-White did not present any evidence in support of any of their cross-claims at trial. In light of this fact, this court dismisses all cross-claims filed by Keller Williams, Krause, and Patt-White and the following findings and conclusions will not further address said cross-claims.

Additionally, at the outset of trial, the parties stipulated to the fact that plaintiffs, in the course of litigation, have entered into settlement agreements with all defendants except the Wigfields. At the close of the evidentiary portion of the non-jury trial held September 8, 2014, counsel for Keller Williams, Krause, and Patt-White presented and entered into evidence the following settlement agreements: "Keller Williams 1," "Krause 1," and "Prudential 1." These agreements, executed individually between the plaintiffs and all defendants except the Wigfields, release and discharge the plaintiffs' claims against Keller Williams, Krause, and Patt-White. Therefore, this court will not address Count VII, Count VIII, Count IX, and the portion of Count X against Keller Williams, as the claims contained in said counts have been released and discharged by virtue of the individual settlement agreements executed between the plaintiffs and Keller Williams, Krause, and Patt-White.

In light of the foregoing, the findings and conclusions contained in this opinion will only address claims by the plaintiffs against the Wigfields which are contained in Count I-VI and X-XI of the plaintiffs' complaint.

## II. FINDINGS OF FACT

At the outset of trial, all of the parties stipulated to the following facts:

1. On or about October 9, 2010, plaintiffs purchased property from defendant Wigfields, located at 4774 Jasper Road, Emmaus, Pennsylvania. ("property")

2. Prior to plaintiffs purchase of said real estate, it was solely owned by defendant Wigfields, who made significant changes to the characteristics and use of the property between the time they bought it and the time it was sold to plaintiffs.

3. During their ownership, defendant Wigfields, converted a barn building located on the property into multiple apartment units, renovated other buildings on the property, altered the property's water waste system and performed other general work as owners of the property.

4. When defendant Wigfields decided to sell the property in 2009, they entered into a listing agreement with defendant Keller Williams.

5. Thereafter, defendant Wigfields prepared various documents and provided information, including a disclosure statement, wherein they made representations with regard to the characteristics, qualities, defects and other matters concerning the property, but did not disclose any violations or unpermitted work concerning the additions, alterations and structural changes which were performed.

6. Defendant Wigfields knew permits were required for portions of the work done at the property and intentionally did not obtain permits.

7. Defendant Wigfields made representations to

plaintiffs that said property, specifically the main residence and apartments were ready for use and that no issues existed with the property.

8. The property was marketed as having two operable income producing rental units.

9. Plaintiffs entered into an agreement of sale to purchase the property on or about August 16, 2010, with settlement to occur before October 9, 2010.

10. At the time of purchase, the rental units were occupied by tenants.

11. Subsequent to plaintiffs' purchase of the property, an issue arose with tenants prompting inspection of the property by Upper Milford Township zoning officer, Alan Brokate, which revealed that there were numerous violations of the Upper Milford Township's laws, regulations and ordinances including, but not limited to, the fact that the property was not zoned or approved for multiple rental units and that one of the rental units would need to be eliminated.

12. Plaintiffs filed a request for a variance and were granted their request to allow for two rental units on said property, conditioned upon an inspection to confirm compliance with Upper Milford Township standards for each dwelling unit.

13. Plaintiffs in the course of litigation have entered into settlement agreements with all defendants except the Wigfield defendants.

In addition to the parties' stipulated findings of fact which this court accepts as findings of fact, this court, upon consideration of the evidence presented at trial, makes the following findings of fact:

14. Despite being marketed as having two operable income producing rental units, the detached barn, bottom dwelling-unit was unpermitted. *See* testimony of Alan Brokate; *See also* notice of violation dated May 25, 2012, Exhibit P-2.

15. In the face of a legal obligation to do so and despite a specific question regarding zoning violations on the property, the Wigfields failed to disclose any zoning violations on the Seller's Property Disclosure Form, Exhibit P-4.

16. Furthermore, on the same Seller's Property Disclosure Form, Exhibit P-4, the Wigfields represented that they were unaware of any "material defects" on the property.

17. Edward C. Wigfield served as a former Upper Milford Township Zoning Officer and was familiar with zoning hearing procedures, zoning laws, building laws, and septic system laws. *See* testimony of Edward C. Wigfield.

18. The Wigfields made the previous representations and nondisclosures despite possessing actual knowledge that the current septic system was unpermitted for three (3) dwelling units and that the detached barn, bottom dwelling unit was unpermitted.

19. At the time the Wigfields made the aforementioned disclosures, they acted with the intent to conceal material defects with the property which would have adversely affected the property's value and to mislead the plaintiffs into relying on said false disclosures.

20. The plaintiffs justifiably relied on said disclosures to their detriment.

21. The Upper Milford Township Zoning Hearing Board granted the plaintiffs a zoning variance for the bottom dwelling unit on the express condition that the septic system on the property be certified as adequate and up to current state and township standards. *See* "Shannon Floyd Zoning Appeal" dated August 13, 2012, Exhibit P-7.

22. The Wigfields performed unpermitted work on the property's septic system.

23. The septic system on the property is noncompliant for three dwelling units.

24. Installing a new, compliant, septic system on the property appropriate for three dwelling units would cost roughly $40,000.00. *See* testimony of Paul Golrik.

## II. CONCLUSIONS OF LAW

The court makes the following conclusions of law concerning Counts I-VI and X-XI contained in the Plaintiffs' Complaint against the Wigifields:

### A. COUNTS I-III & XI — INTENTIONAL MISREPRESENTATION, NEGLIGENT MISREPRESENTATION, INNOCENT MISREPRESENTATION, AND FRAUDULENT NONDISCLOSURE

Generally, a misrepresentation may be actionable pursuant to three theories: intentional misrepresentation, negligent misrepresentation, and innocent misrepresentation. *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999). Similar to a claim for intentional misrepresentation, a separate claim also lies for intentional nondisclosure where the offending party intentionally conceals a material fact to a transaction rather than making an affirmative misrepresentation. *Bortz*, 729 A.2d at 560, citing *Gibbs*,

647 A.2d at 889; *Ortho-McNeil-Janssen Pharms., Inc.*, 52 A.3d 498, citing *Bortz*. In this case, the plaintiffs' complaint alleges the three forms of actionable misrepresentation, intentional, negligent, and innocent, along with a claim of intentional nondisclosure against the Wigfields. Directly aligned with the claims made in this case, the Pennsylvania Supreme Court's analysis in *Bortz v. Noon*, a case arising out of a real estate transaction, addresses Pennsylvania's three forms of legal liability for misrepresentation, in turn, before addressing the tort of intentional nondisclosure.

i. Count I — Intentional Misrepresentation

The court in *Bortz* listed the elements of intentional representation as follows:

(1) A representation;

(2) which is material to the transaction at hand;

(3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;

(4) with the intent of misleading another into relying on it;

(5) justifiable reliance on the misrepresentation; and,

(6) the resulting injury was proximately caused by the reliance.

*Id.* at 560, citing *Gibbs*, 647 A.2d 882, 889 (Pa. 1994), citing Restatement (Second) of Torts § 525 (1977).

For purposes of applying the foregoing to the facts of this case, this court observes, and as stipulated by the parties, that the property was marketed as having two operable, income-producing apartments, that the Wigfields

made representations to the plaintiffs that said property, specifically the main residence and apartments, were ready for use and that no issues existed with the property, and that the Wigfields knew permits were required for portions of the work done at the property and intentionally did not obtain permits. Additionally, the Seller Disclosure Form, Exhibit P-4, reveals that the Wigfields represented that they were unaware of any "material defects" to the Property. The Seller Disclosure Form, Exhibit P-4, clearly states, "A material defect is a problem with a residential real property or any portion of it that would have a significant adverse impact on the value of the property...." *Colaizzi v. Beck*, 895 A.2d 36, 39-40 (Pa. Super. 2006)("A misrepresentation is material if it is of such character that if it had not been misrepresented, the transaction would not have been consummated.").

Here, the Wigfields marketed their property as having two operable, income-producing apartments. They allowed their home to be advertised in this manner with the full knowledge that one of the apartments was never permitted and that the septic system on the property was never permitted to accommodate the apartments. The Wigfields were aware that revealing these facts would adversely impact the value of their property. Furthermore, the Wigfields specifically represented on the Seller Disclosure Form, Exhibit P-4, that the property was free of "material defects." Based on these facts, this court concludes that the representation made by the Wigfields on the Seller's Property Disclosure Form, Exhibit P-4, that the property was free of "material defects" was material to the transaction and made by the Wigfields falsely, with knowledge of its falsity, and with the intent to mislead the plaintiffs into relying on it.

Moreover, the Wigfields' argument that the septic system

functions without issue does not undercut the fundamental fact that they intentionally represented that their property was free of "material defects" for the express purpose of fraudulently inflating the value of their property. Instead, the Wigfields' argument seems more relevant to the idea that the Wigfields never thought that their deceit would be uncovered. As revealed by the testimony of Alan Brokate, Zoning Officer for Upper Milford Township, the unpermitted use and noncompliance would not have been uncovered but for the off-chance complaint of a tenant. Wigfield, a former zoning board chairperson, and Mrs. Wigfield had an affirmative legal duty to disclose their awareness of any "material defects," but instead chose to falsely represent that they were unaware of any "material defects" and left the discovery of said defects to chance.

Whether or not the Wigfields intended to harm the plaintiffs is not the question in this case. Rather, the question is whether the Wigfields knowingly made false representations with the intent of deceiving the plaintiffs. This court concludes that they did. Finally, this court concludes that the plaintiffs' reliance on the representations made by the Wigfields was justified and the injury, suffered by plaintiffs, namely the expense required to bring the property into compliance, was proximately caused by this justified reliance.

ii. Count II — Negligent Misrepresentation

The court in *Bortz* also reviewed the elements of negligent misrepresentation as follows:

(1) A misrepresentation of a material fact;

(2) made under circumstances in which the misrepresenter ought to have known its falsity;

(3) with an intent to induce another to act on it; and

(4) which results in injury to a party acting in justifiable reliance on the misrepresentation.

*Bortz*, at 561. The Pennsylvania Supreme Court went on to describe the difference between the tort of negligent misrepresentation from the tort of intentional misrepresentation as follows, "The elements of negligent misrepresentation differ from intentional misrepresentation in that the misrepresentation must concern a material fact and the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words." *Id.*

Despite this court's conclusion that the Wigfields' conduct rose to the level of an intentional misrepresentation, this court also concludes that the Wigfields' conduct was negligent. As previously stated, the Wigfields misrepresented that the property contained a compliant septic system and that the property was zoned for two income-producing apartments. The Wigfields misrepresented these facts by stating on the Seller's Property Disclosure Form, Exhibit P-4, that the property contained no "material defects." This court concludes that the Wigfields' decision to make this statement in the face of their actual knowledge of the facts was unreasonable. For the foregoing and the conclusions already made above regarding intentional misrepresentation, this court concludes that the Wigfields' representations were also negligent.

### iii. Count III — Innocent Misrepresentation

Next, a claim for innocent misrepresentation, to the extent recognized in this Commonwealth, is an equitable doctrine based upon contract principles supporting equitable rescission to make a contract voidable by the innocent party, where appropriate. *Bortz*, at 564. The

Pennsylvania Supreme Court has specifically declined to extend this equitable doctrine to establish legal tort liability for an innocent representation. This court concludes that the equitable remedy, namely contract rescission, sought in plaintiff's complaint is not appropriate in this case.

### iv. Count XI — Intentional Nondisclosure

In addition to the misrepresentation claims, the plaintiffs seek recovery for the claim of intentional nondisclosure. The tort of intentional nondisclosure maintains the same elements as intentional misrepresentation, except that, in the case of intentional nondisclosure, the offending party intentionally conceals a material fact rather than making an affirmative misrepresentation. *Bortz*, 729 A.2d at 560, citing *Gibbs*, 647 A.2d at 889; *Ortho-McNeil-Janssen Pharms., Inc.*, 52 A.3d 498, citing *Bortz*. In this case, the Wigfields failed to respond to the question, "Are you aware of...any violations of zoning...?" contained at 19(d) of the Seller's Property Disclosure Form, Exhibit P-4. Based on the Wigfields actual knowledge that the second apartment was not properly zoned, this court concludes that the Wigfields intentionally failed to disclose this fact at 19(d) for the express purpose of concealing it from the plaintiffs. For the foregoing and the conclusions already made above regarding the plaintiffs' claim for intentional misrepresentation, this court concludes that the Wigfields' nondisclosure was intentional in this case.

### B. COUNT IV — BREACH OF CONTRACT

Additionally, the plaintiffs' complaint also seek damages for breach of contract. In their complaint, the plaintiffs allege that the Wigfields breached the "duty of good faith and fair dealing" by making the aforementioned misrepresentations. In Pennsylvania, every contract imposes a duty of good faith and fair dealing. *Southeastern*

*Pennsylvania Transportation Authority v. Holmes*, 835 A.2d 851, 858 (Pa.Cmwlth. 2003). A good faith term can be an explicit or implicit term of the contract. *Id.* However, Pennsylvania courts will not imply a good faith term where a plaintiff has an independent cause of action to vindicate the same rights with respect to which the plaintiff invokes the duty of good faith. *Id.* Here, the agreement of sale dated October 8, 2010, Exhibit P-5, does not appear to explicitly include a term imposing a "duty of good faith and fair dealing" and this court would need to imply one in order for the plaintiffs' claim to succeed. Because the plaintiffs maintain multiple other independent causes of action in this case, this court will not imply a duty of good faith in this instance. For the foregoing, this court draws the legal conclusion that a cause of action for breach of the "duty of good faith and fair dealing" does not lie in this instance.

## C. COUNT V — VIOLATION OF PENNSYLVANIA'S RESDL

Furthermore, the plaintiffs allege violations of the Pennsylvania Real Estate Seller Disclosure Law 68 Pa.C.S.A. § 7301 ("RESDL"). The RESDL places the following affirmative duty on sellers, "In completing the property disclosure statement, the seller shall not make any representations that the seller or the agent for the seller knows or has reason to know are false, deceptive or misleading and shall not fail to disclose a known material defect." 68 Pa.C.S.A. § 7308. Furthermore, "any person who willfully or negligently violates or fails to perform any duty prescribed by any provision of this chapter shall be liable in the amount of actual damages suffered by the buyer as a result of a violation of this chapter...." 68 Pa.C.S.A. § 7311. In this instance, the Wigfields represented, on the Seller's Property Disclosure Form,

Exhibit P-4, that they were unaware of any "material defects" to the property which would have a significant adverse impact on the value of the property. This court has already concluded that the Wigfields made this representation with knowledge and with the intent to mislead or deceive. For the foregoing, this court concludes that the Wigfields violated the RESDL and are liable for the actual damages suffered by the plaintiffs.

## D. COUNT VI — UNJUST ENRICHMENT

In the event of a rescission, the plaintiffs' complaint also makes an unjust enrichment claim. However, as already discussed above regarding the claim for innocent misrepresentation, this court concludes that rescission is an inappropriate remedy in this case. Moreover, "it has long been held in this Commonwealth that the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract..." *Wilson Area School Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006). Here, the plaintiffs and Wigfields maintain such an express agreement and this court declines to rescind that express agreement. Therefore, the doctrine of unjust enrichment does not apply in this case.

## E. COUNT X — VIOLATION OF UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

Finally, the plaintiffs make a claim for violations of the Unfair Trade Practices And Consumer Protection Law, 73 P.S. § 201-1 *et seq.* ("UTPCPL") and seek damages, treble damages, and attorneys fees under the statute. Under the UTPCPL, an individual who purchases goods, including real estate, may bring a private action to recover damages caused by another's "act or practice declared unlawful" by the UTPCPL. 73 P.S. 201-9.2; *Skurnowicz v. Lucci*, 798

A.2d 788 (Pa. Super. 2003); *See also In re Zisholtz*, 226 B.R. 824, 831 (Bankr.E.D.Pa. 1998). The UTPCPL goes on to make it unlawful to engage in "unfair or deceptive acts or practices in the conduct of any trade or business." *Skurnowicz*, at 794. In addition to twenty specifically enumerated practices, the UTPCPL provides that "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" constitutes an "unfair or deceptive act or practice. *Id.*; 73 P.S. § 201-2(4)(xxi). In this case, the misrepresentations which served as the bases for the Wigfields' liability for the torts of intentional misrepresentation and intentional nondisclosure, also constitute violations of the UTPCPL catchall, 73 P.S. § 201-2(4)(xxi).

### F. DAMAGES

In this case, the plaintiffs seek actual damages, consequential damages, treble damages under the UTPCPL, and attorney fees and costs under the UTPCPL. The plaintiffs seek damages in an amount sufficient to cover the expense to install a compliant septic system, which would allow the plaintiffs to be granted a zoning variance for the second apartment from the Township. *See* "Shannon Floyd Zoning Appeal," at 9, Exhibit P-7 ("Therefore[,] it is the decision of the Zoning Hearing Board of Upper Milford Township...to grant the requested variance...on the express condition that the septic systems on the premises be certified as adequate and up to current state and township standards..."). At trial, the plaintiffs' expert testified that installation of a compliant septic system would cost approximately $40,000.00. Therefore, this court awards damages to the plaintiffs in the amount of $40,000.00.

In addition to actual and consequential damages, this court must consider the plaintiffs' claims for treble damages and

attorney's fees under the UTPCPL. The UTPCPL affords the trial court discretion to award treble damages, which are punitive in nature. 73 Pa.C.S.A. 201-9.2(a). However, in the present case, and despite the fraudulent nature of the Wigfields' conduct, this court does not find treble damages appropriate in this case and declines to award them. On the other hand, upon consideration of the plaintiffs' claim for attorney's fees and costs, this court concludes that an award of attorney's fees is appropriate to allow the claimants to be made whole without diminishing their net recovery by paying attorney's fees. *McCauslin v. Reliance Finance Co.*, 751 A.2d 683 (Pa.Super. 2000). However, an award of attorney's fees is not meant to provide the claimants or their attorney with a windfall or bonanza upon a successful claim. *Id.* With this in mind, this court also reviews the four *McCauslin* factors: (1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to properly conduct the case; (2) the customary charges of the members of the bar for similar services; (3) the amount involved in the controversy and the benefits resulting to the client or clients from the services; and (4) the contingency or certainty of the compensation. *Neal v. Bavarian Motors, Inc.*, 882 A.2d 1022 (Pa.Super. 2005). After review of the attorney's bill for services rendered, Exhibit P-10, this court concludes that fees and time expended on the plaintiffs' UTPCPL claim in the amount of $20,126.18 are reasonable and appropriate based on the *McCauslin* factors.

### III. CONCLUSION

Pursuant to the findings of fact and conclusions of law set forth above, the court finds that defendants, Edward C. Wigfield and Carol A. Wigfield, are liable to the plaintiffs, Shannon Floyd, Norman D'Avanzo, and Ruth D'Avanzo, in the amount of $40,000.00 in damages and $20,126.18

in attorney's fees for a total verdict of $60,126.18.

## ORDER

And now, this of October, 2014, upon consideration of plaintiffs, Shannon Floyd, Norman D'Avanzo, and Ruth D'Avanzo's, complaint filed on April 2, 2013, answer, new matter and cross-claim on behalf of defendants Edward C. Wigfield And Carol A. Wigfield filed on May 16, 2013, defendant Northampton County Regional Realty, LLC d/b/a Keller Williams real estate's new matter and new matter cross-claims filed on May 7, 2013, defendant's, Krause Home Inspection Service, Inc. Answer to plaintiffs' complaint with new matter and cross claims filed on July 17, 2013, answer, new matter and crossclaims of defendant, prudential patt, white real estate-macungie, to plaintiffs' complaint filed on August 8, 2013, after non-jury trial held September 8, 2014, and for the reasons set forth in the accompanying opinion;

It is hereby ordered that verdict is entered in favor of plaintiffs, Shannon Floyd, Norman D'Avanzo, and Ruth D'Avanzo, and against defendants, Edward C. Wigfield and Carol A. Wigfield, in the amount of $60,126.18;

And it is further ordered that all said cross-claims filed by defendants, Edward C. Wigfield, Carol A. Wigfield, Northampton County Regional Realty, LLC d/b/a Keller Williams Real Estate, Krause Home Inspection Service, Inc., and Prudential Patt-White Real Estate-Macungie, are hereby dismissed with prejudice.[1]

---

1. At trial, no evidence was presented by any of the defendants in furtherance of any of their cross-claims.