J-A20024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| OLIVIA H. STONER, ESQUIRE, ADMINISTRATRIX, D.B.N. FOR THE ESTATE OF CHRISTINE PERKINS, DECEASED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MARK QUINLAN, DONNA BROWN, RNC, BSN, ALBERT EINSTEIN MEDICAL CENTER D/B/A WILLOWCREST, WILLOW CREST, JEFFERSON HEALTH SYSTEM, ALBERT EINSTEIN HEALTHCARE NETWORK, | |
| Appellees | No. 3064 EDA 2014 |

Appeal from the Order Entered September 16, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 00019 November Term, 2009

BEFORE:  DONOHUE, SHOGAN, and WECHT, JJ.

MEMORANDUM BY SHOGAN, J.:                  **FILED SEPTEMBER 29, 2015**

Appellant, Olivia H. Stoner, Esquire, administratrix *de bonis non* for the estate of Christine Perkins, deceased, appeals from the order entered on September 16, 2014, denying class certification.[1]  We affirm.

---

[1] An order denying class action certification is separate from and ancillary to the main cause of action, and, therefore, appealable as a collateral order pursuant to Pa.R.A.P. 313.  **Niemiec v. Allstate Ins. Co.**, 721 A.2d 807, 810 (Pa. Super. 1998).

The record reveals that on August 5, 2014, the trial court held a hearing on Appellant's motion for class certification in an action against Appellees Mark Quinlan, Donna Brown, Albert Einstein Medical Center D/B/A Willowcrest, Willowcrest, Albert Einstein Healthcare Network, and Jefferson Health System, Inc. (collectively "Appellees" or "Defendants"). In an order filed on September 16, 2014, the trial court denied Appellant's motion concluding that the evidence presented by Appellant failed to establish the necessary elements to obtain class status under Pa.R.C.P. 1702.

In its September 16, 2014 opinion, the trial court made the following relevant findings of fact:

> 1. After several amended pleadings, [Appellant] filed a Th[ir]d Amended Complaint on November 21, 2012, which is now the operative Complaint. (Exh. "C", Third Amended Complaint).
>
> 2. Although [Appellant] asserted a variety of different causes of action in the Third Amended Complaint, this action is, at heart, a professional negligence case.
>
> 3. These allegations of substandard medical care underlie each and every one of [Appellant's] causes of action.
>
> 4. [Appellant] alleges that [Appellant's] Decedent, Christine Perkins, was a resident of Willowcrest from October 2007 until June 2008. See [Appellant's] Third Amended Complaint, ¶ 3.
>
> 5. [Appellant] further alleges that the Einstein Defendants failed to adequately care for Perkins during her time at Willowcrest. Id.
>
> 6. Based on this alleged inadequate care, [Appellant's] Third Amended Complaint asserts thirteen separate claims on behalf of the putative class: Negligence (First Claim); Corporate Negligence (Second Claim); Vicarious Negligent Liability (Third Claim); the Wrongful Death statute (Fourth Claim); the Survival

Act (Fifth Claim); the Medicare as Secondary Payer Act (Sixth Claim); Breach of Written Agreement (Seventh Claim); Breach of Contract Oral Agreement (Eighth Claim); Breach of Contract Third Party Beneficiary (Ninth Claim); Fraud and Negligent Misrepresentation (Tenth Claim); Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Eleventh Claim); Breach of the Implied Covenant of Good Faith and Fair Dealing (Twelfth Claim); and Unjust Enrichment/Restitution (Thirteenth Claim).

7. The Third Amended Complaint includes two exhibits. Exhibit "A" is a computer printout of a webpage providing information relating to the Willowcrest facility. (Exh. "C", Third Am. Compl. at Exh. "A").

8. Exhibit "B" is an August 18, 2009 "Settlement Agreement" between various federal government departments and "Willowcrest Nursing Home." (Exh. "C", Third Am. Compl. at Exh. "B").

9. [Appellant's] vicarious and corporate negligence claims assert that the medical care provided to Decedent during her stay at Willowcrest deviated from the standard of care by failing to properly treat Decedent's pressure ulcers and failing to provide Decedent with appropriate nutrition and hydration, purportedly as required by various statutes and regulations. (Exh. "C", Third Am. Compl. at ¶¶115-160).

10. [Appellant's] contract claims allege that Decedent had written and oral contracts with each of the Defendants to provide Decedent with medical care, and that Defendants' breached those alleged contracts with her by providing her "worthless" medical care as outlined in [Appellant's] negligence claims. (Exh. "C", Third Am. Compl. at ¶¶160-194; 208-214).

11. [Appellant's] fraud-based claims allege that all of the Defendants made misrepresentations to the Decedent regarding the quality of care that she would be provided at Willowcrest because her medical care was "worthless" as outlined in [Appellant's] negligence claims. (Exh. "C", Third Am. Compl. at ¶¶195-207).

12. Finally, [Appellant's] unjust enrichment claim alleges that all of the Defendants were unjustly enriched by third party payments for medical care provided to the Decedent because her medical care was "worthless" as outlined in [Appellant's] negligence claims. (Exh. "C", Third Am. Compl. at ¶¶215-219).

13. In support of her Motion for Class Certification and her corporate liability claim against Jefferson Health System, [Appellant] argues that, based on various corporate documents and financial statements, Jefferson Health System purportedly exerted "control" over its member Albert Einstein Medical Center and the medical care provided at its institutions.

14. In an attempt to bolster that claim and support her Motion for Class Certification, [Appellant] identifies an accountant, Bruce R. Engstrom, as an expert witness to testify about the corporate relationships between Jefferson Health System and the other corporate defendants. ([Appellant's] Proposed Findings at Exh. "C").

15. Specifically, Mr. Engstrom opined that, based on corporate structure and various corporate documents and financial statements produced in a prior litigation, Jefferson Health System purportedly exerted "control" over its member Albert Einstein Medical Center and the medical care provided at its institutions. Id.

16. [Appellant] asserts these claims on behalf of herself as well as a putative class.

17. [Appellant's] proposed class definition attempts to define the class as all residents of Willowcrest between 2005 and 2009 that were harmed either physically or financially by Defendants' actions:

> The Class consists of all individuals who are residents, family members, and their legal representatives of the Willowcrest Nursing Home from 2005 to 2009 who received deficient wound care; nursing care; deficient nutrition and hydration; inadequate diabetic care; inadequate physician and nursing care; inadequate infection control; sepsis; urinary tract infections, acute renal failure due to

dehydration and anemia and were injured as a result thereof.

See [Appellant's] Motion for Class Certification at ¶ 65.

18. [Appellant] further attempts to define the class as:

The proposed class presently includes all residents of Willowcrest from 2005 - 2009 who were harmed either financially or physically by the Defendants' actions. Specifically, the class includes persons with the following deficient claims: diabetes management; management of medication; nutrition management; infection control; pain management; skin integrity; ulcer care, and physician care.

See [Appellant's] Motion for Class Certification at ¶ 66.

19. Still further, [Appellant] attempts to define subclasses as follows:

The proposed class also contains from 2005 to 2007 all persons who had a financial or contractual claim and from 2007 to 2009 all persons who had a financial or contract; fraud and/or negligent representation; breach of the consumer protection laws and pain and suffering claims.

See [Appellant's] Motion for Class Certification at ¶ 67.

## B. [APPELLANT], OLIVIA STONER, ESQ.

20. [Appellant], as the proposed representative of the putative class, is the administratrix of the estate of Selma Jessup who was related to the Decedent, Christine Perkins.

21. [Appellant], as the proposed representative of the putative class, is the administratrix, d.b.n, of the estate of Christine Perkins. See [Appellant's] Proposed FF/CL at ¶ 2.

22. [Appellant] admitted that she was appointed as the administratrix of the Perkins estate for the sole purpose of perpetuating this litigation. See Dep. O. Stoner at 54.

23. At deposition, [Appellant] also testified that she was not responsible for any of the financial costs and expenses involved with maintaining this litigation and that those expenses were instead being borne by [Appellant's] counsel, Rhonda Hill Wilson, Esquire. See Dep. O. Stoner at 71. Additionally, in the event that damages were awarded in this case, they would go to the Perkins Estate, of which [Appellant] is not a beneficiary. Id.

## C. [APPELLANT'S] DECEDENT, CHRISTINE PERKINS

24. Christine Perkins was a resident of Willowcrest from October 9, 2007 through May 20, 2008, with the exception of hospital stays during that time. See [Appellant's] Medical Records at 171, 3266.

25. Perkins was 79 years old during the time she was a resident at Willowcrest. Id.

26. Perkins was admitted to Albert Einstein Medical Center on October 3, 2007, due to a fall she suffered at her home. Id. at 15, 18, 171.

27. After discharge from the hospital, she transferred to Willowcrest for rehabilitation and other follow-up care. Id. at 5, 6, 66, 68, 69, 72, 10-03 171.

28. Over the course of the next 8 months, Perkins' condition gradually worsened.

29. Perkins died while in the hospital on June 7, 2008. Id. at 3588.

30. Her cause of death is listed as sepsis, secondary to decubitus ulcers, secondary to dementia. Id. at 3589.

Trial Court Opinion, 9/16/14, at 2-6.

As noted above, the trial court denied Appellant's motion for class certification on September 16, 2014. Appellant filed a timely appeal, and both the trial court and Appellant have complied with Pa.R.A.P. 1925.

On appeal, Appellant argues that the trial court abused its discretion in denying class action certification. Appellant's Brief at 4. Our standard of review in this matter is well settled, and the trial court's order denying class certification will not be disturbed on appeal unless the court neglected to consider the requirements of the rules governing class certification, or the court abused its discretion in applying the class certification rules. **Baldassari v. Suburban Cable TV Co.**, 808 A.2d 184, 189 (Pa. Super. 2002). Additionally:

> At a class certification hearing, the burden of proof lies with the proponent but, this being a preliminary hearing, it is not a heavy burden. The proponent need only present evidence sufficient to make out a *prima facie* case from which the court can conclude that the five class certification requirements are met. It is clear in Pennsylvania that Appellant's burden to establish the prerequisites for class certification is not a heavy one. It is the strong and oft-repeated policy of this Commonwealth that, in applying the rules for class certification, decisions should be made liberally and in favor of maintaining a class action.

**Id**. (internal citations and quotation marks omitted). However, in order to obtain class certification, the proponent of the class must meet all five of the following requirements set forth in Pa.R.C.P. 1702:

> One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

Pa.R.C.P. 1702. Additionally, we note that "[a] trial court's decision concerning class certification is a mixed finding of law and fact." **Weismer by Weismer v. Beech-Nut Nutrition Corp.**, 615 A.2d 428, 430 (Pa. Super. 1992) (citation omitted).

In the instant case, the trial court concluded that Appellant failed to satisfy three of the required elements set forth in Pa.R.C.P. 1702, namely commonality, typicality, and that class certification would be a fair and efficient method of adjudicating the controversy. Trial Court Opinion, 9/16/14, at 6. Because Appellant was required to satisfy all five requirements, failing to meet any one of the factors is fatal to her claim. Pa.R.C.P. 1702; **see Samuel-Bassett v. Kia Motors Am., Inc.**, 34 A.3d 1, 22 (Pa. 2011) (stating that each distinct prerequisite for class certification must be established by the class proponent).

In the class-action context, commonality is described as follows:

Common questions of law and fact will generally exist if the class members' legal grievances are directly traceable to the same practice or course of conduct on the part of the class opponent. The common question of fact [requirement] means precisely that **the facts must be substantially the same so that proof as to one claimant would be proof as to all**. This is what gives the class action its legal viability. While the existence of

individual questions of fact is not necessarily fatal, it is essential that there be a predominance of common issues, shared by all the class members, which can be justly resolved in a single proceeding.

*Clark v. Pfizer Inc.*, 990 A.2d 17, 24 (Pa. Super. 2010) (emphasis added) (citations and quotation marks omitted).

On appeal, Appellant argues that "the corporate decision for understaffing in Willowcrest; the failure to adhere to federal and state nursing home laws and regulations; the use of unqualified and unlicensed personnel for the resident population at Willowcrest and the corporate goal of budgetary gain led to the myriad harms caused to the Appellant's decedent and the members of the proposed class." Appellant's Brief at 28. While Appellant's claims against Appellees regarding harm to the proposed class members stem from a common characteristic, *i.e.*, they were residents at Willowcrest who allegedly suffered deficient care, it does not alter the fact that each one of those more than 300 claimants in the proposed class is unique. The proposed class members necessarily received individualized care and were treated separately over a period of years, and therefore, the cause of any harm could have originated from numerous sources. Thus, any treatment, care, or injury was distinct as to each individual resident. Simply stated, proof as to one is not proof as to all. As the trial court explained:

> 49. "If, as here, each question of disputed fact has a different origin, a different manner of proof and to which there are different defenses, we cannot consider them to be common questions of fact within the meaning of Pa. R. Civ. P. 1702."

***Allegheny Cty. Hous. Auth. v. Berry***, 487 A.2d 995, 997 (Pa. Super. 1985).

50. Likewise, "... where the challenged conduct affects the potential class members in different ways, commonality may not exist." ***Helo v. Encompass Ins.***, 2008 Phila.Ct.Com.Pl. LEXIS 129, at 10 (Pa.Ct.Com.Pl. 2008)[, *affirmed*, 970 A.2d 487 (Pa. Super. Ct. filed January 12, 2009) (unpublished memorandum)].

51. In addition, where "there exists intervening and possibly superseding causes of damage ... , liability cannot be determined on a class-wide basis." ***Id***. at 11.

52. [Here, Appellant] has failed to demonstrate which former patients are class members; [Appellant's] evidence is unable to establish that this Court would not be required to evaluate the individual facts and circumstances of every resident of Willowcrest between 2005 and 2009 to determine both that the resident suffered financial or physical harm and that they suffered such harm as a result of the conduct of [Appellees].

53. The need for mini-trials that might be required to determine such individualized questions is antithetical to the purpose of class actions. ***See, e.g., Sanneman v. Chrysler Corp.***, 191 F.R.D. 441, 446 (E.D. Pa. 2000) (finding that class certification is inappropriate in cases in which "[d]etermining a membership in the class would essentially require a mini-hearing on the merits of each class member's case" because such "administrative burdens are incongruous with the efficiencies expected in a class action"); ***Mike v. Safeco Ins. Co. of Am.***, 223 F.R.D. 50, 53 (D. Conn. 2004) (finding that the proposed class, as defined, was "untenable because the court would have to conduct an individual inquiry regarding the merits of each proposed plaintiff's claim in order to determine class membership"); ***White v. Williams***, 208 F.R.D. 123, 129-30 (D. N.J. 2002) (finding that class certification was not proper because adoption of the proposed class definition "would require the Court to

conduct a number of mini-hearings or to employ some other screening mechanism prior to defining the class").[2]

54. [Appellant] has not provided sufficient evidence to meet her burden of showing commonality for any of the class claims.

Trial Court Opinion, 9/16/14, at 10-11.[3] We agree with the trial court's analysis. The vast number of proposed class members, with disparate treatment histories, medical backgrounds, and alleged injuries would necessitate a profuse number of "mini-trials" in order to ultimately define the class. As such, we conclude that Appellant has failed to establish commonality pursuant to Pa.R.C.P. 1702.[4]

After careful review, we discern no error of law or abuse of discretion in the trial court's decision to deny class certification in this matter. Accordingly, we affirm the order entered on September 16, 2014.

Order affirmed.

_____

[2] "Federal precedent is instructive in construing Pennsylvania's class action rules." *Janicik v. Prudential Ins. Co. of Am.*, 451 A.2d 451, 454 n.3 (Pa. Super. 1982).

[3] Additionally, we note that where the issue of damages requires separate mini-trials of a large number of individual claims, courts have found that the determination of damages becomes the predominate issue and renders the class unmanageable as a class action. *State of Alabama v. Blue Bird Body Co., Inc.*, 573 F.2d 309 (5th Cir.1978).

[4] Because we conclude that Appellant failed to establish the commonality requirement, we need not address the other factors set forth under Pa.R.C.P. 1702. *Samuel-Bassett*, 34 A.3d at 22.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/29/2015